UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, *Plaintiff*, v. U.S. DEPARTMENT OF THE ARMY *et al*, *Defendants*. | No. 21-cv-2482 (DLF) |

**MEMORANDUM OPINION**

Citizens for Responsibility and Ethics in Washington (CREW) brings this case against the U.S. Department of the Army and the South Dakota National Guard for failing to process CREW's request for documents under the Freedom of Information Act (FOIA). *See generally* Am. Compl., Dkt. 8. Before the Court are the defendants' Motion for Summary Judgment, Dkt. 23, and CREW's Cross-Motion for Summary Judgment, Dkt. 24. For the reasons that follow, the Court will grant CREW's motion and deny the defendants' motion.

**I.    BACKGROUND**

**A.    Factual background and procedural history**

On June 29, 2021, South Dakota Governor Kristi Noem announced that South Dakota National Guard troops would be deployed to Texas to help secure the border between the United States and Mexico. Pl.'s Stmt. of Undisputed Material Facts ¶ 1, Dkt. 24-3. According to Noem's press release, the deployment would be funded by private donation. *Id.*

CREW submitted two FOIA requests, one on July 6, 2021, and another on September 21, 2021, seeking information and various communications about the deployment and private

donation. *Id.* ¶ 6; Defs.' Stmt. of Undisputed Material Facts ¶¶ 11, 19, 24, Dkt. 23-4.  CREW filed this suit on September 22, 2021, to compel the release of records responsive to those requests. Pl.'s Stmt. of Undisputed Material Facts ¶ 7.  Subsequently, the defendants released approximately 2,413 pages of responsive records.  *Id.* ¶ 8.

The only remaining disputes concern the defendants' withholding of two categories of records under FOIA Exemption 5, which protects documents subject to the deliberative process privilege.[1]  *Id.* ¶ 9; *see* 5 U.S.C. § 552(b)(5).  First, it withheld discussions between the South Dakota National Guard's Adjutant General Jeffrey Marlette and state officials who were formulating Governor Noem's press release statements, as well as the draft statements themselves. Pl.'s Stmt. of Undisputed Material Facts ¶ 9(1).  Second, it withheld communications among state officials, including the Adjutant General, relating to inquiries about the private donations.  *Id.* ¶ 9(2).  Both sides now move for summary judgment.

### B.     Relevant background of the National Guard

The National Guard "plays a dual role, operating under joint federal and state control." *In re Sealed Case*, 551 F.3d 1047, 1048 (D.C. Cir. 2009).  This "dual federal-state status," *id.* at 1049, is guided by the Constitution's grant of authority to Congress for "organizing, arming, and disciplining[] the militia, and for governing such part of them as may be employed in the service of the United States," but "reserving to the states respectively, the appointment of the officers, and the authority of training the militia according to the discipline prescribed by Congress," *id.* at 1048

---

[1] The defendants also identified a third category "in which a subordinate State official consulted the Adjutant General concerning questions from a United States Senator's office regarding [the] deployment," page eight of the *Vaughn* index.  Wiggins Decl. ¶ 11(2), Dkt. 23-2.  But the plaintiffs do not appear to contest this withholding.  *See* Pl.'s Stmt. of Undisputed Material Facts ¶ 9 (identifying only two disputed categories); Pl.'s Proposed Order, Dkt. 24-4 (requesting disclosure of many pages from the *Vaughn* index, but not page eight).  Thus, the Court will not address this category.

(quoting U.S. Const. art. I, § 8). Each of the fifty states thus has its own National Guard unit which it is responsible for training and which the state governor may "command 'to respond to local emergencies.'" *Id.* (quoting *Perpich v. Dep't of Def.*, 496 U.S. 334, 351 (1990)). But "the Federal Government provides virtually all of the funding, the materiel, and the leadership for the State Guard units," *id.* (quoting *Perpich*, 496 U.S. at 351), and may call the units into federal service under the command of the Department of Defense, *see id.*

Despite this "murky" hybrid status, the D.C. Circuit has held that "under the plain language of the relevant statutes, the Privacy Act's definition of agency"—which "adopts the [FOIA]'s definition of agency"—"includes federally recognized National Guard units at all times." *Id.* at 1049. Accordingly, the parties do not dispute that the South Dakota National Guard and its adjutant general are subject to FOIA. *See* Defs.' Mem. in Supp. of Summ. J. at 3–4, Dkt. 23-1.[2] The only question is whether the defendants may withhold the adjutant general's conversations with state officials under FOIA Exemption 5.

## II.  LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a federal agency moves for summary judgment in a FOIA case, all facts and inferences must be viewed in

---

[2] Although the defendants originally denied the plaintiff's FOIA request on the basis that the South Dakota National Guard was not acting in a federal capacity with respect to the matters addressed in the relevant records and "was, therefore, not an agency subject to FOIA," *see* Wiggins Decl. ¶ 6, the defendants appear to have abandoned that argument, *see id.* ¶¶ 6–7; Defs.' Mem. at 5–6. Because the defendants did not raise this argument in their motion for summary judgment, the Court cannot consider it.

the light most favorable to the requester, and the agency bears the burden of showing that it complied with FOIA.  *Chambers v. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

To prevail under Rule 56, a federal agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspection requirements."  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam) (quotation marks omitted).  "The system of disclosure established by the FOIA is simple in theory[:] [a] federal agency must disclose agency records unless they may be withheld pursuant to one of the nine enumerated exemptions listed in [5 U.S.C.] § 552(b)."  *Dep't of Just. v. Julian*, 486 U.S. 1, 8 (1988).  "The agency bears the burden of justifying the applicability of [any] FOIA exemptions[.]"  *Mobley v. CIA*, 806 F.3d 568, 580 (D.C. Cir. 2015).

Federal courts rely on agency affidavits to determine whether an agency complied with FOIA.  *Perry*, 684 F.2d. at 126.  Agency affidavits are entitled to a presumption of good faith, *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and a court may grant summary judgment based on an affidavit if it contains reasonably specific detail and is not called into question by contradictory record evidence or evidence of bad faith, *Judicial Watch v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013).  "[T]he vast majority of FOIA cases can be resolved on summary judgment[.]"  *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

### III.   ANALYSIS

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5).  Exemption 5 "incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant," including, as relevant here, "the deliberative process privilege."  *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008)

4

(quotation marks omitted). To invoke the deliberative process privilege, an agency must show two things. First, "the communication must be 'inter-agency or intra-agency.'" *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001) (quoting 5 U.S.C. § 552(b)(5)). Second, the information withheld must be both "predecisional" and "deliberative." *Loving*, 550 F.3d at 38 (quotation marks omitted). As to the second requirement, there is no dispute about the predecisional and deliberative nature of both categories of withheld documents. *See* Defs.' Mem. at 15, Pl.'s Mem. in Supp. of Cross-Mot. for Summ. J. at 7, Dkt. 24-1.

Even so, "the first condition of Exemption 5 is no less important than the second," and even concededly deliberative materials are protected only if the "communication [was] 'inter-agency or intra-agency.'" *Klamath*, 532 U.S. at 9 (quoting 5 U.S.C. § 552(b)(5)). "'[A]gency' means 'each authority of the Government of the United States,' and 'includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government, or any independent regulatory agency.'" *Id.* (quoting first 5 U.S.C. § 551(1), then *id.* § 552(f) (alteration omitted)). Accordingly, to fall under Exemption 5, the deliberations must occur between authorities or within an authority of the federal government. *Georgia v. Dep't of Just.*, No. 1:21-cv-03138, 2023 WL 2116375, at *3 (D.D.C. Feb. 20, 2023).

The defendants concede that the records in dispute are not "inter-agency." Defs.' Mem. at 8 n.1. As explained, a state National Guard is included in FOIA's definition of "agency" because it is "part of the military department of the Army." *In re Sealed Case*, 551 F.3d at 1049. On the other hand, "a state agency is generally not an agency for purposes of the FOIA." *People for the Am. Way Found. v. Dep't of Educ.*, 516 F. Supp. 2d 28, 36 (D.D.C. 2007). Because all of the

withheld communications were between the Adjutant General of the South Dakota National Guard (agency) and state officials (non-agency), they are not inter-agency.

The only contested question, then, is whether the records qualify as "intra-agency." "[T]he most natural meaning of the phrase 'intra-agency memorandum' is a memorandum that is addressed both to and from employees of a single agency." *Klamath*, 532 U.S. at 9 (citation omitted). No party here suggests that the governor or her staff are employees, or otherwise a part, of the National Guard as a federal agency. *See* Defs.' Mem. at 8 n.1 (conceding that the governor and her staff are non-agency state actors). Nonetheless, the defendants contend that the records are exempt from disclosure because the "consultant corollary" exception to Exemption 5 applies. *Id.* at 9. Under this exception, "records exchanged between an agency and outside consultants qualify as 'intra-agency' for purposes of Exemption 5 if (1) the agency solicited the records from the non-agency party or there exists 'some indicia of a consultant relationship between the outsider and the agency' and (2) the records were 'created for the purpose of aiding the *agency's* deliberative process.'" *Judicial Watch, Inc. v. Dep't of State*, 306 F. Supp. 3d 97, 106–07 (D.D.C. 2018) (quoting first *Nat'l Inst. of Mil. Just. v. Dep't of Def.*, 512 F.3d 677, 686–87 (D.C. Cir. 2008), then *Pub. Citizen v. Dep't of Just.*, 111 F.3d 168, 170 (D.C. Cir. 1997) (emphasis in original)).

Here, neither category of communications was "created for the purpose of aiding the *agency's* deliberative process." *Dow Jones & Co. v. Dep't of Just.*, 917 F.2d 571, 575 (D.C. Cir. 1990) (emphasis in original). In each, the federal official's advice was sought to inform *state officials'* decision-making. The first category, according to the Adjutant General, "reflect[ed] the joint deliberations of State officials and [him] concerning the contents *to recommend to the Governor*, who was the ultimate decisionmaker concerning the content of these statements."

6

Marlette Decl. ¶ 8, Dkt. 23-3 (emphasis added).  With respect to the second category, the Adjutant General was "included" into "discussions among State officials" about how they should "respon[d] to inquiries" about the deployment, including inquiries about "the proper procedure for accepting a private donation by the State of South Dakota, proper routing of such inquiries and which office(s) would be responsible for follow up."  *Id.* ¶ 15.  In both instances, state officials solicited and received feedback on how they should talk about the deployment to the press, public, and other inquirers.  In other words, the Adjutant General was a participant in the state's deliberative process.

      The defendants have provided no support for extending the consultant corollary to cover this "reverse relationship."  *Nat'l Wildlife Fed'n v. U.S. Army Corps of Engineers*, 596 F. Supp. 3d 130, 141 (D.D.C. 2022).  To the contrary, "[n]one of [this Circuit's] cases have extended" Exemption 5 "to the protection of deliberations of a *non-agency* either as an interpretation of 'intra-agency' or 'inter-agency.'"  *Dow Jones*, 917 F.2d at 575 (emphasis in original); *see also Jud. Watch*, 306 F. Supp. 3d at 107–08 ("[T]he consultant corollary . . . does not apply when deliberations concern a policy decision to be made by the outsider, not the agency.").  The one-way nature of the consultant corollary—to cover communications in which an outsider aids the agency, but not when the agency aids an outsider—makes sense given the purpose of Exemption 5.  "The point is not to protect Government secrecy pure and simple"; the "object is to enhance the quality of *agency* decisions by protecting open and frank discussion among those who make them within the Government."  *Klamath*, 532 U.S. at 9 (emphasis added) (quotation marks omitted).  As a doctrine of executive privilege, "what matters is whether a document will expose the pre-decisional and deliberative processes *of the Executive Branch*."  *Jud. Watch v. Dep't of Energy*, 412 F.3d 125, 131 (D.C. Cir. 2005) (emphasis added).

Although the defendants do not contest the consultant corollary's limitation to communications in aid of the agency's decision-making, *see* Defs.' Opp'n at 4, Dkt. 26, they argue that the deliberations at issue reflect a joint venture requiring both federal and state decisions. While there may be cases where "back-and-forth communications" between an agency and non-agency are in aid of both entities' decision-making, *Am. Oversight v. Dep't of Treas.*, 474 F. Supp. 3d 251, 265 (D.D.C. 2020), the defendants offer no evidence that occurred here. Nor do the defendants identify any federal decision that was at stake.

That the Adjutant General provided insight into "Federal policy and the applicable Federal rules and regulations" to guide the state's decision-making, Defs.' Mem. at 12; *see also* Defs.' Opp'n at 6–7, is not enough to satisfy the consultant corollary standard. Decisions about the content of the governor's statements, responses, and general communications strategy remained the State's. *See* Marlette Decl. ¶ 8 (explaining that the first category of "communications reflect . . . input into . . . the contents to recommend to the Governor, who was the ultimate decisionmaker[.]"); *id.* ¶ 17 (explaining that the second category of communications reflect "State officials['] . . . deliberative discussions" about "how to respond to issues raised in the inquiries about a private donation to the State of South Dakota"). Even if the Adjutant General provided input to "ensur[e]" the state decisions' "compliance with the applicable federal laws, regulations and procedures," *id.*, there is no indication that these communications "involve[d] more than obviously unidirectional advice" from the agency to the state. *Jud. Watch*, 306 F. Supp. 3d at 113.

Furthermore, the necessity of the National Guard and the State working together does not make their communications intra-agency. Certainly, exempting their conversations from disclosure might make sense as a policy matter—but "policy concerns cannot trump the plain language of the Freedom of Information Act or the underlying policy of the FOIA favoring public

8

disclosure." *Ctr. for Int'l Env't L. v. Off. of U.S. Trade Rep.*, 237 F. Supp. 2d 17, 30 (D.D.C. 2002) (citing *Klamath*'s refusal to read an "Indian Trust" exemption into FOIA to protect federal-tribal communications, 532 U.S. at 15–16). The clear text of Exemption 5 exempts only "inter-agency or intra-agency memorandums" from disclosure. *Klamath*, 532 U.S. at 9 (emphasizing the "apparent plainness of this text"). Because "neither the terms of the exemption nor the statutory definitions say anything about communications with outsiders," the consultant corollary already stretches the statutory text. *Id.* Extending the consultant corollary even further to include any collaborative enterprise would obliterate the "inter-agency or intra-agency" limitation from the statute altogether.

For this reason, courts have repeatedly refused to classify federal-state communications as "intra-agency" even when in aid of a dual federal-state partnership. For instance, another court in this district explained that communications between the federal Department of Education and the D.C. Mayor's Office were not "intra-agency" under FOIA even though "their relationship was created by a Congressional mandate" to "jointly oversee" the program at issue. *People for the Am. Way Found.*, 516 F. Supp. 2d at 36–39. Other courts have reached similar conclusions. *See, e.g.*, *Town of Waterford v. N.Y. State Dep't of Env't Conservation*, 18 N.Y.3d 652, 658 (2012) (denying "intra-agency" label to communications between the federal EPA and state agency under state equivalent of FOIA, despite the two being in "a collaborative relationship" and "presumably working together toward the same ameliorative goal"); *Gen. Elec. Co. v. EPA*, 18 F. Supp. 2d 138, 141–42 (D. Mass. 1998) (explaining that "communications sent from a federal to a state agency in the course of a coordinated regulatory effort" may be withheld under Exemption 5 "[o]nly when the state agency is, in effect, drawn into the deliberative process and consulted as to the outcome" of federal decisions); *cf. Ctr. for Int'l Env't L.*, 237 F. Supp. 2d at 26, 31–40 (denying "intra-

agency" label to bilateral trade negotiations with a foreign government despite the "co-regulatory nature").  In sum, "there is simply no precedent for withholding documents under Exemption 5 where a federal agency and a non-federal entity share ultimate decision-making authority with respect to a co-regulatory project." *People for the Am. Way Found.*, 516 F. Supp. 2d at 39.

Likewise, that state and federal officials are on the same team seeking a common goal is not enough to exempt their communications from disclosure.  *Cf.* Defs.' Opp'n at 11–14.  A mere lack of adversity is a necessary but not a sufficient basis for the consultant corollary to apply.  In *Klamath*, the Supreme Court explained that the corollary only covers communications "between Government agencies and outside consultants *hired by them*" to aid "in [the] *agency's* process of deliberation."  532 U.S. at 10 (emphases added).  And *McKinley*, the D.C. Circuit case on which the defendants principally rely, confirms this conclusion.  *See* Defs.' Mem. at 10–11; Defs.' Opp'n at 5–6 (citing *McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331 (D.C. Cir. 2011)).  *McKinley*, in applying the consultant corollary to discussions between the federal Board of the Federal Reserve and state Reserve Banks, emphasized that "the Board and Reserve Banks work[ed] together to assist in achieving . . . a common goal."  *Id.* at 336–37.  Even so, the court did not dispense with the requirement that the material be in aid of the *federal agency*'s deliberative process.  *Id.* at 338.  Indeed, the court explicitly found that "the Board sought information *from* the [state Reserve Bank]" "to aid in *its* deliberative process.[3]  *Id*. (emphases added).

The other cases the defendants cite, *see* Defs.' Opp'n at 5–6, are not to the contrary.  All similarly found that the agencies withheld materials that aided the agencies', as opposed to the

---

[3] The Court need not address the parties' dispute whether an agency must "solicit" advice it receives to fall under the consultant corollary, *see* Defs.' Mem. at 9–10; Pl.'s Mem. at 8–9; Defs.' Opp'n at 7–10, because the Court finds that the National Guard, the federal agency, received no advice at all.

non-agencies', decision-making. *See Am. Oversight* 474 F. Supp. 3d at 268 ("[T]he Court concludes that the withheld records were created for the purpose of aiding the agency's deliberative process[.]" (quotation marks omitted)); *Am. Oversight, Inc. v. HHS*, No. 17-cv-827, 2022 WL 1719001, at *15 (D.D.C. May 27, 2022) ("The legal standard is clear: only communications that are part and parcel of *the agency's* deliberative process remain intra-agency documents for purposes of Exemption 5." (quotation marks and alteration omitted) (emphasis in original)); *Jud. Watch*, 306 F. Supp. 3d at 112 ("[T]he Court concludes that the records at issue in this case . . . were created for the purpose of aiding the agency's deliberative process."). Neither *McKinley* nor the other cases cited by the defendants support withholding communications where an agency provides federal guidance and insight into a state decision, as the National Guard did here.

Despite the Court's conclusion that the withheld records are not exempt from disclosure under Exemption 5, the Court is sympathetic to the defendants' concern that disclosure of the records could hinder future discussions between the Adjutant General and state officials in pursuit of a common goal. *See* Defs.' Opp'n at 1–2. The Court further acknowledges that this ruling produces an odd outcome considering that these discussions would be protected either under Exemption 5 (if wholly federal) and under South Dakota law (if wholly state), *see* S.D. Codified Laws § 1-27-1.9, and yet the very structure of the National Guard necessitates crossing federal-state lines.[4] But this decision is compelled by binding D.C. Circuit precedent. *See In re Sealed Case*, 551 F.3d at 1049. As both parties appear to acknowledge, *In re Sealed Case* dictates that

---

[4] Odder still, the South Dakota governor is the "commander-in-chief" of the National Guard and appoints, commissions, and commands its officers, including the Adjutant General, when not in federal service. S.D. Const. art. IV, § 3; U.S. Const. art. I, § 8; *Ass'n of Civilian Technicians, Inc. v. United States*, 603 F.3d 989, 993 (D.C. Cir. 2010). For this reason, it would seem anomalous that advice about state matters given to the commander-in-chief by her subordinate would be subject to FOIA.

the National Guard (and thus the Adjutant General) is a federal agency under FOIA "at all times," even "when not on active federal duty," *id*. *See* Pl.'s Mem. at 2–3 n.1 (citing *In re Sealed Case* on this point); Defs.' Mem. at 4 (explaining that the Adjutant General is "*federally* recognized" and is thus "a federal agency" (emphasis in original)); *id.* at 8 (acknowledging that the Adjutant General counts as an agency under FOIA). And the state is not. *See* Defs.' Mem. at 8 n.1. Accordingly, communications between the Adjutant General and the state are not exempt from disclosure under FOIA.

## CONCLUSION

For the foregoing reasons, CREW's motion for summary judgment is granted, and the defendants' motion for summary judgment is denied. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

June 14, 2023